# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MORGAN TIRE OF SACRAMENTO, INC., | ) ) ) | CASE NO. 5:15-cv-2134 |
| PLAINTIFF, | ) ) ) | JUDGE SARA LIOI |
| vs. | ) ) | |
| GOODYEAR TIRE & RUBBER CO., et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| DEFENDANTS. | ) ) ) | |

Before the Court is defendants' motion to dismiss the amended complaint (Doc. No. 56 ["Mot."]), plaintiff's opposition (Doc. No. 57 ["Opp'n"]), and defendants' reply (Doc. No. 58 ["Reply"]). For the reasons set forth herein, the motion is granted in part and denied in part.

## I. BACKGROUND

### A.     Procedural Background

This case was originally filed on October 15, 2013 in the United States District Court for the Eastern District of California and assigned to Judge Kimberly J. Mueller. (Case No. 2:13-cv-2135.) In its complaint, plaintiff Morgan Tire of Sacramento, Inc. ("Morgan Tire" or "plaintiff") asserted claims of conversion, breach of contract, intentional interference with prospective business advantage, breach of good faith and fair dealing, and unfair business competition against defendants, The Goodyear Tire and Rubber Company ("Goodyear") and Wingfoot Commercial Tire Systems, LLC ("Wingfoot") (collectively, "defendants"). On defendants' motion, by order dated November 13, 2014, Judge Mueller transferred the case to this district, where it was filed as Case No. 5:14-cv-2507. This first lawsuit was voluntarily dismissed by

plaintiff on December 5, 2014. On January 16, 2015, plaintiff refiled in California essentially the very same case, absent any reference to the forum selection clause. The case was assigned again to Judge Mueller. (Case No. 2:15-cv-133.) On April 20, 2015, this second lawsuit was ordered transferred to this district, but that order was stayed pending resolution of plaintiff's petition for writ of mandamus, which was denied on July 28, 2015. The stay of transfer was lifted and the case was transferred to this district for the second time on October 14, 2015. On November 13, 2015, plaintiff filed its amended complaint – the fourth complaint that has now been filed in this dispute.

**B.      Factual Allegations**

Morgan Tire is a California corporation qualified to do business in California and with its principal office there. (Doc. No. 54, Amended Complaint ["Compl."] ¶ 1.) Defendant Goodyear is an Ohio corporation, transacting business in California. (*Id.* ¶ 2.) Defendant Wingfoot is an Ohio limited liability company and a wholly owned subsidiary of Goodyear, with its principal office in Arkansas, and transacting business in California with a retread shop. (*Id.* ¶ 3.)

Morgan Tire has been a Goodyear tire distributor in Sacramento, CA since 1993, and has distributed Goodyear retreads since 2001, operating out of a location near Sacramento (Woodland, CA). (*Id.* ¶¶ 8, 16.) The parties' relationships have been governed at all times by Goodyear's Independent Dealer Agreement (the "New Tire Agreement") and Authorized Retreader Agreement[1] (the "Retreader Agreement"), copies of which are attached to the amended complaint as Exs. A and B, respectively.[2] (*Id.* ¶¶ 9-17.) As a practical result of the

---

[1] The parties uniformly refer to this as the "Retread" Agreement; but the Court will conform its usage to the actual title on Ex. B.

[2] In ruling on a motion to dismiss under Fed. R. Civ. P. 12, a court "may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein."

2

Retreader Agreement between the parties, Morgan Tire was the only independent retreader in Northern California approved to service Goodyear's national accounts, including Penske, UPS and Federal Express (the "National Accounts"). (*Id.* ¶ 18.) Morgan Tire made substantial investments in its retread shop to qualify for preapproval by the National Accounts. (*Id.*) The retread sales to the National Accounts made up about 61% of Morgan Tire's gross retread sales. (*Id.* ¶ 19.)

Both the New Tire Agreement and the Retreader Agreement provided for "terminat[ion] at any time by either party, with or without cause, upon at least thirty (30) days prior written notice to the other party." (*Id.* ¶¶ 15, 20; Ex. A at 358 § 26(b); *see also* Ex. B at 367 § 17.)

Since 1971, Morgan Tire has had contracts with Sacramento County to supply its tire needs. It has contracted with the County to provide Goodyear new tires since 1993 and retread tires since 2009 (the "County Contract"). (*Id.* ¶ 22.) These contracts are publicly bid at least every three (3) years. Original contracts are for one year, renewable twice. The County has always renewed plaintiff's contracts for the full three years. (*Id.* ¶ 23.)

In April 2012, Morgan Tire submitted a bid for the new County Contract, relying upon Goodyear's promise to supply all the tire and retread material required at specific prices. (*Id.* ¶ 25.) Goodyear's promise was conditioned on Morgan Tire's compliance with certain additional requirements: Morgan Tire had to use the more expensive "cushion and precure" method, had to purchase and install new equipment, and had to continue to abide by the Retreader Agreement, all of which Morgan Tire did. (*Id.* ¶ 26.) Morgan Tire alleges that this amounted to a subcontract

---

*Bassett v. Nat'l Coll. Ath. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001).)

between it and Goodyear (the "County Subcontract"[3] – *Id.* Ex. C) to supply Morgan Tire with all the tire materials required to fulfill its County Contracts. (*Id.* ¶ 27.) In June 2012, Morgan Tire was awarded the County Contract. (*Id.* ¶ 28; Ex. D.) It also entered into contracts with nearby cities, including Sacramento and Roseville (the "Piggy-Back Contracts"), who were permitted to avoid the expensive bid process by joining in the County Contract. (*Id.* ¶ 29; Ex. E.)[4]

In the midst of this activity, Morgan Tire also planned to build a retread plant in Nevada to produce and sell retread tires for Continental Tires ("Continental"), a newcomer to the retread market. Several Goodyear employees allegedly threatened that Goodyear would cancel Morgan Tire's contracts and cut off all supply of tires, despite the non-exclusivity of the Retreader Agreement, unless Morgan Tire stopped talks with Continental. (*Id.* ¶ 32.) Morgan Tire alleges that Goodyear similarly threatened other tire distributors who were in discussions with Continental. (*Id.* ¶ 34.) Morgan Tire further alleges that, despite these threats, over the next several months Goodyear allowed and encouraged it to make large investments to stock up for all its contracts, including the County Contracts. (*Id.* ¶¶ 34, 35.)

In December 2012, to maintain Goodyear's quality requirements for the retread business, Morgan Tire needed to purchase a new retread machine from Goodyear, but Goodyear refused to sell the machine to Morgan Tire unless Morgan Tire discontinued talks with Continental. Instead, plaintiff purchased the machine directly from the manufacturer, but at a higher cost. (*Id.* ¶ 36.)

---

[3] The complaint actually refers to it as the "County of Sacramento Subcontract." (Compl. ¶ 27.) The Court has chosen to abbreviate this to "County Subcontract."

[4] For the sake of brevity, any reference herein to "County Contracts," in the plural, will include both the County Contract and the Piggy-Back Contracts.

Then, on January 17, 2013, Morgan Tire was "shocked" to receive a letter from Goodyear (the "Termination Letter") summarily terminating plaintiff's access to Goodyear's online ordering and accounting system, supposedly effective February 16, 2013 (30 days later—the contractual termination period), but actually occurring on January 28, 2013 (10 days after the Termination Letter). (*Id.* ¶ 37.) At receipt of the Termination Letter, Morgan Tire had nearly $1 million worth of Goodyear new and retread tires and tread rubber in stock. (*Id.* ¶ 38.)

Because Goodyear terminated Morgan Tire's access to the online ordering account, Morgan Tire was unable to both sell the majority of its remaining stock and honor its existing contracts, including the County Contracts. (*Id*. ¶¶ 39, 40.) Morgan Tire also lost all its National Account business because Goodyear falsely told those accounts that Morgan Tire's relationship was terminated because it was in financial trouble. (*Id.* ¶ 41.) Morgan Tire alleges that Goodyear thereafter promised the County that Goodyear's subsidiary, defendant Wingfoot, would fulfill the County Contracts at Morgan Tire's prices, despite the fact that Wingfoot had previously bid for the contracts at higher prices. (*Id.* ¶ 42.) Morgan Tire believes Goodyear misrepresented to the County and the piggy-back cities that the relationship with Morgan Tire was terminated because it had violated an exclusivity agreement with Goodyear. (*Id.* ¶ 44.) Morgan Tire alleges that, by the way it dealt with Morgan Tire (and with another distributor that wanted to carry other tire products), Goodyear made it known in the tire industry what would happen to dealers that engaged in talks with other suppliers. (*Id.* ¶ 46.)

Morgan Tire's amended complaint sets forth against Goodyear two breach of contract claims, a claim for promissory estoppel, and a claim for breach of the covenant of good faith and fair dealing. It further asserts claims against both defendants for intentional interference with

contract, intentional interference with prospective business advantage, and violation of California's unfair competition statute.

## II. DISCUSSION

### A.    Standard on a Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Under this standard, all the factual allegations in plaintiff's amended complaint are taken as true.

**B. Analysis**

    **1.**        **Choice of Law**

Goodyear argues, as a threshold matter, that Ohio law governs all of Morgan Tire's claims because the New Tire Agreement states that "[t]he terms and provisions of this Agreement shall be construed under and governed by the laws of the State of Ohio without giving effect to the principles of conflict of laws thereof." (Mot. at 414,[5] quoting Ex. A § 30.) Further, the Retreader Agreement provides that "the terms and provision of whatever 'Dealer Contract' may be in effect between the parties concurrently with this agreement shall be given full force and effect and shall prevail over any provisions of this agreement which may be contradictory." (Compl. Ex. B § 20.) According to Goodyear, by virtue of its incorporation of the Retreader Agreement, the County Subcontract is governed by these same choice of law provisions. (Mot. at 414.)

In opposition, Morgan Tire argues that California law applies to the County Subcontract, although agreeing that "Ohio law applies to those counts that relate squarely to the New Tire Agreement and the Retread[er] Agreement." (Opp'n at 431.) Morgan Tire identifies the second claim and portions of the third and sixth claims as those governed by Ohio law. Otherwise, it asserts that California law applies. Morgan Tire denies any concession on its part that the Retreader Agreement is incorporated into the County Subcontract. Rather, it argues that the County Subcontract contains no choice of law provision, requiring the Court to apply the law of the state with the most signficant relationship to the transaction and the parties, which Morgan Tire argues is California. (*Id.*, citing *Bahr v. Technical Consumer Prods., Inc.*, No. 5:13CV1057,

---

[5] All page number references are to the page identification number generated by the Court's electronic docketing system.

2013 WL 6230961, at *5 (N.D. Ohio Dec. 2, 2013).) Morgan Tire also argues that Judge Mueller's prior ruling related only to application of the forum selection clause, and that any argument defendants might raise about "law of the case" cannot be used to expand Judge Mueller's forum selection analysis to issues that were not before her. (*Id.* at 433.) In any event, Morgan Tire claims that Judge Mueller's ruling can, and should, be revisited by this Court, because it was incorrect and not final. (*Id.*)

In reply, Goodyear argues law of the case, in particular arguing for application of earlier rulings in the original and refiled lawsuits, where Judge Mueller twice found that "'[a]ll of plaintiff's claims arise out of the contractual relation in this case.'" (Reply at 458, quoting Doc. No. 25, Order at 202,[6] in turn quoting the 11/13/14 Order in the first lawsuit.) She emphasized that this applies to "[n]ot just the new tire claims, or the unfair competition claims, or the tortious interference claims. All of the claims." (Doc. No. 25 at 202.) She reached this conclusion because each claim "arise[s] out of the contractual relation and implicate[s] the contract's terms." (*Id.*, citation and internal quotation marks omitted.) Judge Mueller further described the "contractual relation" as including the New Tire and Retreader Agreements, in addition to the County Subcontract. (*See* Doc. No. 25 at 197.) Judge Mueller concluded that the forum selection clause governed all of plaintiff's claims and required transfer of the entire case to this district.

This Court must find either extraordinary circumstances or convincing reasons to depart from Judge Mueller's legal rulings as to the forum selection clause and their *common sense implications* as to choice of law. *See, e.g.*, *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988) ("as a rule courts should be loathe [to revisit

---

[6] As is the Clerk's practice, after the transfer from the Eastern District of California, all the documents filed in that case were imported into the record of the instant case and assigned docket numbers.

8

prior decisions of its own or of a coordinate court] in the absence of extraordinary circumstances"); *Gillig v. Advanced Cardiovascular Sys.*, 67 F.3d 586, 590 (6th Cir. 1995) ("it is the practice to treat each successive decision as establishing the law of the case and depart from it only for convincing reasons[]") (quoting 1b James W. Moore, et al., MOORE'S FEDERAL PRACTICE ¶ 0.401[4.-1] (2d ed. 1994)). As properly pointed out by defendants, "[i]t makes no sense to say the very provision Judge Mueller found to apply to, and require transfer of, all of Morgan Tire's claims would not also apply to require application of the parties' choice of law to those claims." (Reply at 458.) *See, e.g.*, *Liles v. Ginn-La West End, Ltd.*, 631 F.3d 1242, 1247 (11th Cir. 2011) (per curiam) ("[f]orum-selection clauses are often, but not always, designed to specify not only the site, but also the applicable law, for a given dispute[]").

In Ohio, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied unless either the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or application of the law of the chosen state would be contrary to the fundamental policy of a state having greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties." *Schulke Radio Prods., Ltd. v. Midwestern Broadcasting Co.*, 453 N.E.2d 683 (Ohio 1983) Syllabus.

Notably, Morgan Tire does not challenge the Ohio choice-of-law provision generally. It admits that it applies to some portions of the lawsuit, but argues narrowly that the provision does not apply to the County Subcontract, because that Subcontract supposedly stands alone. But, as explained below in section 2, Morgan Tire is mistaken in its view that the County Subcontract is a separate contract, with no linkage to the New Tire and Retreader Agreements.

The Court concludes, both independently and as the law of the case, that Ohio law applies to all of plaintiff's claims.

### 2.    Breach of Contract against Goodyear (First and Second Claims)

These two claims, although pleaded separately in the complaint, are closely intertwined and, therefore, are discussed together.

In its first claim, Morgan Tire alleges that, under the County Subcontract, which it views as separate, Goodyear "agreed to supply Morgan Tire's requirements at the agreed price for the duration of the County Contracts." (Compl. ¶ 50.) Goodyear allegedly breached the County Subcontract by refusing to supply Morgan Tire with the contract requirements, thereby making it impossible for Morgan Tire to honor the County Contracts, which were ultimately terminated. (*Id.* ¶¶ 51, 54.) Morgan Tire alleges that Goodyear "was obligated to perform the County Subcontract[] regardless of the dealer status [of Morgan Tire] [and] Goodyear improperly tied its obligation to perform to the dealer's status of Morgan Tire, which status Goodyear summarily terminated." (*Id.* ¶ 52.) Morgan Tire also alleges on information and belief, that Goodyear had the practice of repurchasing excess material from terminated suppliers, but refused to follow that practice with Morgan Tire following its termination so as to "make an example of them [sic] in the tire industry." (*Id.* ¶ 57.)

In its second claim, Morgan Tire alleges that Goodyear breached the New Tire Agreement and the Retreader Agreement by failing to give the requisite 30-day notice of termination, by preventing Morgan Tire from selling its remaining inventory, and by refusing to follow established industry custom regarding the repurchase of plaintiff's excess stock. (*Id.* ¶¶ 60, 61, 62.)

10

Morgan Tire is fundamentally mistaken in its current view that the County Subcontract stands alone and apart from the New Tire and Retreader Agreements, and that, under the County Subcontract, Goodyear had a separate and continuing duty to supply all of Morgan Tire's requirements for the duration of the County Contracts, without regard to Morgan Tire's status as a Goodyear distributor, or its lack thereof.

As properly noted by Goodyear, the allegations of the complaint control, not Morgan Tire's "after the fact, contradictory arguments." (Reply at 458.) Morgan Tire agreed to incorporate the Retreader Agreement into the County Subcontract, which Morgan Tire acknowledges was "at all relevant times valid and enforceable[.]" (Compl. ¶ 49.) In ¶ 26 of the complaint, Morgan Tire refers to Ex. C as "summariz[ing] the terms of Goodyear's 'agreement to support the County of Sacramento bid[.]'" Ex. C explicitly outlines two "part[s] of our agreement[.]" (Compl. Ex. C at 370.) The first part was the "sales agreement" setting forth "the pricing on the selected treads to support the county bid." (*Id.*) "Part two of [the] agreement [was] compliance with the GAR [Goodyear Authorized Retreader] contract[.]" (*Id.*) If, as Morgan Tire now argues, the Retreader Agreement was not incorporated (Opp'n at 435), why would "compliance" have been required? Morgan Tire's acceptance of those "two parts" is evidenced by the fact that Goodyear, by plaintiff's own admission and argument, actually performed for six months under the County Subcontract, until January 2013, when it terminated its entire relationship with Morgan Tire. (Compl. ¶ 30.)

Further, the Retreader Agreement states that "the terms and provisions of whatever 'Dealer Contract' may be in effect between the parties concurrently with this agreement [*i.e.*, the New Tire Agreement] shall be given full force and effect and shall prevail over any provisions of

this agreement which may be contradictory." (*Id.* Ex. B § 20.) Therefore, both the Retreader Agreement and the New Tire Agreement were incorporated into the County Subcontract.

Under both the New Tire and the Retreader Agreements, Goodyear had a right, as did Morgan Tire, to terminate the contract at any time, with or without cause, on 30 days notice. (*Id.* Ex. A § 26(b); Ex. B. § 17.) Further, the New Tire Agreement provided that, upon termination, Morgan Tire was required to "immediately cease holding itself out as a Dealer of [Goodyear products]." (*Id.* Ex. A § 26(e).) Therefore, status as a dealer was a required component of the County Subcontract (as well as the New Tire and Retreader Agreements).

Goodyear is also correct that Morgan Tire can point to no contractual term suggesting that there was any practice of repurchasing excess material from terminated dealers. In fact, the parties considered the possibility of lost investments following termination and mutually agreed not to hold one another liable for any such losses. (Mot. at 416, citing *Kashif v. Cent. State Univ.*, 729 N.E.2d 787, 791 (Ohio Ct. App. 1999) (rejecting contention that trial court should have considered "usual and customary practices" where "the terms of a contract are clear and unambiguous"); *see also* Compl. Ex. A § 26(f); Ex. C § 20.)

To the extent the first claim attempts to set forth a breach of the County Subcontract as a separate contract, it fails.

In the second claim, Morgan Tire alleges that by cutting off its access to the online accounting and sales resources, Goodyear gave only 10 days notice of termination, not the required 30 days, and that such breach resulted in damages to Morgan Tire because it was unable to sell its remaining inventory. These allegations are sufficient to state a breach of contract claim under the New Tire and Retreaders Agreements.

Further, although the complaint fails to state a claim in count one as to any *separate* contractual duty on Goodyear's part under the County Subcontract to provide all of Morgan Tire's requirements for the duration of its County Contracts and/or to buy back its inventory following termination, the County Subcontract also contained the 30-day notice requirement, by virtue of its incorporation of the Retreader Agreement.

Therefore, as to both claims one and two, Goodyear may be liable to Morgan Tire in damages for the period of time between January 28, 2013 and February 16, 2013. *See Stoebermann v. Beacon Journal Publ'g Co.*, 894 N.E.2d 750, 756 (Ohio Ct. App. 2008); *Kennington v. Emergency Mgmt. Servs.*, No. 95-CA-53, 1996 WL 27834, at *4 (Ohio Ct. App. Jan. 24, 1996).

To the extent discussed herein, Goodyear is not entitled to dismissal of the first or second claim.

### 3.      Promissory Estoppel (Third Claim)

In its third claim for relief, Morgan Tire alleges that "Goodyear promised to Morgan Tire that it would supply Morgan Tire's requirements for the County Contracts at the agreed upon prices that Goodyear provided as part of the bid for the County Contracts if Morgan Tire won the County Contracts and if Morgan Tire agreed to certain capital investments at its plant and further agreed to abide by the terms of Goodyear's authorized retreader agreement." (Compl. ¶ 66.) Morgan Tire also alleges that "Goodyear further made additional demands that Morgan Tire purchase additional equipment and real property to expand and enhance their [sic] Goodyear retread operations upon the express and implied promises that those investments would be profitable as a result of the parties' continued business together." (*Id.* ¶ 69.) Plaintiff claims that,

13

in reliance on these promises, it performed all of Goodyear's conditions, and suffered damages when Goodyear did not honor its promises.

In its motion, Goodyear argues that no matter how Morgan Tire's third claim may try to "recast[] its first claim for breach of the County Subcontract in the vernacular of promissory estoppel[,] … this rephrasing does not change the fact that each of these claimed commitments by Goodyear is covered by the terms of the alleged County Subcontract." (Mot. at 417, internal reference omitted.) And, "[i]ndeed, Morgan Tire defines this very quid pro quo as the 'County Subcontract.'" (*Id.*, internal citation omitted.) Goodyear argues that "[i]t is black-letter law that promissory estoppel is not available as a cause of action when, as here, a clear and unambiguous contract governs the matter in dispute." (*Id.*, citing *O.E. Meyer Co. v. BOC Group, Inc.*, No. E-99-002, 2000 WL 234549, at *5 (Ohio Ct. App. Mar. 3, 2000) (collecting cases).) Because Morgan Tire "has admitted the County Subcontract's existence, terms, and validity[,]" it "'cannot bring … [a] promissory estoppel claim[].'" (*Id.*, quoting Compl. ¶¶ 26, 49 and *Kreamer Sports, Inc. v. Rocky Brands, Inc.*, No. 2:06-cv-576, 2008 WL 4210539, at *13 (S.D. Ohio Sept. 9, 2008).) Goodyear further argues that Morgan Tire cannot evade the plain and unambiguous language of their agreement to the effect that neither party would hold the other liable for any loss of investment in the event of termination. (Mot. at 417-18.)

In opposition, Morgan Tire argues that it is permitted to plead promissory estoppel as an alternative to breach of contract, especially where, as here, both parties challenge the existence of the contract. (Opp'n at 439 and n. 2, citing documents in the record.)

In reply, Goodyear argues that the allegations in the amended complaint control, and Morgan Tire is not permitted "to obscure its allegations to manufacture a factual dispute over the terms of the alleged contracts." (Reply at 460.)

14

The Court does not understand why plaintiff argues that both parties are challenging the existence of the contract. Plaintiff surely is not doing so. The complaint uncategorically alleges that the County Subcontract was "valid and enforceable[.]" (Compl. ¶ 49.) The complaint also defines the County Subcontract as the quid pro quo whereby Morgan Tire "agree[d] to Goodyear's conditions" in exchange for Goodyear's agreement "to supply Morgan Tire with all tire and retread material required for Morgan Tire to fulfill its obligations under the County [Contracts][.]" (*Id*. ¶ 27.)

Therefore, although pleading in the alternative is permissible as a general principle, in this case, where neither party is contesting the validity or enforceability of the contracts, Morgan Tire cannot bring a quasi-contractual, promissory estoppel claim essentially arguing that Goodyear promised to supply all of Morgan Tire's needs to fulfill its County Contracts and is estopped from changing its position after terminating its dealership relationship with Morgan Tire. *Kreamer Sports*, *supra* (citing cases). This is, as defendants argue, a "recasting" of the breach of contract claim and it requires construction of the terms of the County Subcontract which, in turn, requires construction of the New Tire and Retreader Agreements.

Goodyear's motion to dismiss the third claim is granted.

### 4.    Intentional Interference with Contract (Fourth Claim)

In claim four of the amended complaint, Morgan Tire alleges that Goodyear intentionally caused Morgan Tire to breach its County Contracts by cutting off Morgan Tire's supply of tires and retread material for the purpose of harming Morgan Tire and replacing it on the Country Contracts with Goodyear's subsidiary, Wingfoot. (Compl. ¶ 75.) Morgan Tire "is informed and believes" that, after Goodyear terminated its contracts with Morgan Tire, it then made disparaging comments to representatives of the County Contracts about Morgan Tire and its

15

financial condition "with the intent to harm Morgan Tire financially and induce those entities to terminate their contracts with Morgan Tire and to instead to use [sic] the services of Wingfoot." (*Id.* ¶ 76.) Goodyear "further stated or implied to the entities above that Morgan Tire was in breach of an alleged exclusive contract with Goodyear," and that defendants "provided pricing to the entities identified above, which prices were below those previously bid by Wingfoot for the same contracts awarded to Morgan Tire and which represented a loss to Goodyear and Wingfoot, but which prices were submitted with the intent to cause those entities to terminate their contracts with Morgan Tire." (*Id.* ¶¶ 77, 78.)

Under Ohio law, the elements of tortious interference with contract are: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999) (citing *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863 (Ohio 1995) Syllabus ¶ 2).

Defendants argue that, because Morgan Tire cannot assert any breach of contract, it cannot side-step the terms of the contracts by pleading in tort the same facts, based on the same agreements. (Mot. at 418.) Moreover, no tort claim can be created by terminating a contract pursuant to its own terms. (*Id.*)  Defendants assert that "[a]llowing Morgan Tire now to second-guess Goodyear's exercise of its concededly 'valid and enforceable' rights based on conjecture and speculation would rewrite the plain terms of the agreements and prevent Goodyear from doing exactly what the agreements say it *can* do: 'terminate[] at any time … *with or without cause*.'" (*Id.* at 419, quoting Compl Ex. A, § 26(f), emphasis added.) The gravamen of Morgan Tire's claim, according to defendants, is that the termination of the agreements – not any alleged

after-the-fact statements by Goodyear – "'procured Morgan Tire's breach.'" (*Id.* at 420, quoting Compl. ¶ 75.)[7]

Defendants are misconstruing this claim. Morgan Tire is not alleging that, by breaching the contractual relationship between Goodyear and Morgan Tire, Goodyear committed the tort of interference with *that* contractual relationship. Admittedly, such claim would not be permitted under Ohio law, where the only recovery is under the contract unless there is a separate duty apart from the contract. *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996) ("In Ohio, a breach of contract does not create a tort claim."). Instead, Morgan Tire is claiming that defendants interfered with Morgan Tire's County Contracts — Goodyear by refusing, allegedly wrongfully, to continue to supply Morgan Tire's County Contracts requirements after terminating its dealership relationship with Morgan Tire, and Wingfoot by stepping in to offer itself as a substitute for Morgan Tire on the County Contracts.

Despite this mischaracterization, defendants are still entitled to dismissal of the claim because, under the New Tire and Retreader Agreements, Goodyear had a right to terminate the contracts, with or without cause, given the appropriate number of days notice. Although Morgan Tire may have a claim against Goodyear for breach of that notice provision, the fact that the termination may have resulted in Morgan Tire's inability to supply its County Contracts does not amount to intentional interference with those contracts. *Fred Siegel Co.*, 707 N.E.2d at 858 ("even if an actor's interference with another's contract causes damages to be suffered, that interference does not constitute a tort if the interference is justified[]").

---

[7] Defendants also assert that this claim can only stand if plaintiff alleges and proves that defendants procured a *third party's* breach of a contract with plaintiff, not *plaintiff's* breach. (Mot. at 420, citing Restatement (Second) of Torts § 766 and cases applying it.) But it is not § 766 that applies to plaintiff's claim. Defendants' argument conveniently ignores § 766A of the Restatement, which applies to intentional interference with a party's performance of *its own* contract by actually preventing the party's performance and thereby causing the party to breach a contract with a third party.

Defendants' motion to dismiss the fourth claim is granted.

**5.      Intentional Interference with Prospective Business Relationship (Fifth Claim)**

In claim five, Morgan Tire alleges that defendants Goodyear and Wingfoot intentionally made disparaging remarks about Morgan Tire and about its financial condition with the intent to harm Morgan Tire financially and to induce the National Accounts and the County Contracts, with whom Morgan Tire had a decades-long relationship, to use Wingfoot's tire services instead of those of Morgan Tire. (Compl. ¶¶ 82, 83.) Morgan Tire alleges that the disparaging statements damaged its professional reputation with the representatives of the National Accounts and County Contracts, as well as like users, and caused it to lose expected economic advantage of its ongoing relationships with them. (*Id.* ¶¶ 86, 87.)

"The elements of tortious interference with a business relationship are: (1) the existence of a prospective business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Morrison v. Renner*, No. CT2011-0010, 2011 WL 6930160, at *3 (Ohio Ct. App. Dec. 19, 2011) (citations omitted). "[I]nterference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract." *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 774 N.E.2d 775, 780-81 (Ohio Ct. App. 2002).

Defendants' position is that, notwithstanding the lengthly contractual relationships enjoyed by plaintiff with the National Accounts and the County Contracts, this claim requires proof that defendants interfered with *prospective* relationships and, in this case, there is simply no guarantee that these relationships would have continued indefinitely, absent interference by

18

defendants. According to Goodyear, since it had the right to terminate its New Tire Agreement and/or its Retreader Agreement with Morgan Tire on 30 days notice, with or without cause (which would have rendered Morgan Tire incapable of serving as a Goodyear distributor), any prospective business relationship, even in light of the long history of contractual relationships that Morgan Tire enjoyed with these entities, is purely speculative.

But Morgan Tire argues in opposition that this claim alleges that defendants' disparagement of Morgan Tire (now a competitor of defendants, aligned with different brands) was aimed at impeding Morgan Tire's ability to win back customers with which it had long-standing business relationships. Morgan Tire asserts that it will prove that it has already won back the County Contracts and several of Goodyear's former National Accounts, but that it could have done so more quickly but for defendants' tortious interference.

The problem with Morgan Tire's argument is that it does not align with the allegations of the amended complaint. Although, in appropriate cases, a party may be permitted to amend its complaint to conform to later developments, this is not such a case. This case originated in 2013 and plaintiff has had (and taken) more than sufficient opportunities to appropriately frame its allegations.[8] No further opportunity to amend is required and the current amended complaint does not support the position plaintiff now takes on this claim.

Defendants' motion to dismiss the fifth claim is granted.

### 6.     Breach of Covenant of Good Faith and Fair Dealing (Sixth Claim)

In its sixth claim, Morgan Tire alleges that all of the contracts and agreements with Goodyear in this case "contain an implied covenant of good faith and fair dealing by which

---

[8] In fact, plaintiff has come perilously close to abusing the judicial process by its repeated filing, dismissing, and refiling, all the while making minor "tweaks" to the complaint in an obvious effort to proceed in a non-contractual forum of its choice.

Goodyear agreed to refrain from doing any act which would prevent or impede Morgan Tire from enjoying the benefits of those agreements." (Compl. ¶ 90.) Morgan Tire alleges that Goodyear breached these covenants "by not acting fairly, honestly or reasonably as to the terms of the express County Subcontract[] and as to the terms of implied and oral agreements in the course of dealing between Morgan Tire and Goodyear for decades, and by refusing to supply Morgan Tire's requirements for Goodyear product." (*Id.* ¶ 92.) "Goodyear additionally breached the duty of good faith and fair dealing after the termination of their relationship by refusing to wind up outstanding amounts due Morgan Tire … ." (*Id.* ¶ 93.)

Goodyear argues in its motion that this is not a "stand-alone" claim as a matter of law, but is only a "gap-filling doctrine designed to enforce the parties' intent [and] it cannot be used to hoist onto parties new obligations to which they never agreed." (Mot. at 423-24, citing *Fultz & Thatcher v. Burrows Grp. Corp.*, No. CA2005-11-126, 2006 WL 3833971, at *6-7 (Ohio Ct. App. Dec. 28, 2006).)

Morgan Tire argues that the cases relied upon by Goodyear "speak merely to the inability to maintain a claim for breach of the implied duty of good faith and fair dealing when one has not asserted a claim for breach of contract." (Opp'n at 444, citation omitted.)

Goodyear is correct that, in Ohio, one cannot raise an independent claim for breach of the duty of good faith and fair dealing. *Nachar v. PNC Bank, N.A.*, 901 F. Supp. 2d 1012, 1019-20 (N.D. Ohio 2012) ("Ohio does not recognize a claim for breach of the implied covenants of good faith and fair dealing independent of a breach of contract claim. The covenant of good faith 'is part of a contract claim, and does not stand alone as a separate cause of action.'") (internal citations omitted); *see also Thomasville Furniture Indus., Inc. v. JGR Inc.*, 3 F. App'x 467, 472 (6th Cir. 2001) (referring to the covenant of good faith and fair dealing under Ohio law as a

20

"salutary rule of construction, not [ ] a basis for a cause of action") (internal quotes and citation omitted).[9]

A close look at the allegations in claim six of plaintiff's complaint shows that it is primarily an aspect of plaintiff's breach of contract claims and, to that extent, plaintiff cannot be barred at this juncture from seeking to assert rights to good faith and fair dealing that are an implied part of *every* contract. That said, as already noted, these implied covenants do not expand on the terms of express contracts. Therefore, to the extent plaintiff alleges that Goodyear breached the covenants "as to the terms of implied and oral agreements in the course of dealing" between the parties, those allegations cannot stand.

Goodyear's motion to dismiss the sixth claim as a separate claim for relief is granted.

### 7. Violation of California's Unfair Competition Law (Claim Seven)

In claim seven, plaintiff asserts a claim under California's Business and Professions Code § 17200, *et seq.* (the Unfair Competition Law ["UCL"]). Plaintiff alleges that "Goodyear terminated Morgan Tire's ability to service its County Contracts and the National Accounts because Morgan Tire did not cease negotiations with Continental to put a Continental retread plant in Sparks, Nevada." (Compl. ¶ 96.) Further, Goodyear "communicated to Morgan Tire customers, including the representatives of the County Contracts and the National Accounts, that Morgan Tire was terminated because it breached required exclusivity in its agreements[,]" and "because it was experiencing financial difficulties." (*Id.* ¶¶ 98, 99.) "These representations were false when made and were made with knowledge of their falsehood and with the intention of causing harm to Morgan Tire." (*Id.* ¶ 100.) This "sudden cancellation of the agreements was also

---

[9] Ohio law provides for an exception only in the context of insurance. *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315 (Ohio 1983), Syllabus ¶ 1 ("Based upon the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort against the insurer.") (citation omitted).

done in collusion with Wingfoot with the wrongful intent of harming Morgan Tire's business prospects and damaging its professional reputation among the tire purchasing community[.]" (*Id.* ¶ 102.) Defendants "us[ed] Goodyear's superior strength and dominance in the market and its relationship with subsidiary company Wingfoot to give them an unfair competitive advantage in the market by ousting Morgan Tire and using Wingfoot to takeover [sic] Morgan Tire's business." (*Id.*) Defendants "used their superior position and collusive relationship to impede competition." (*Id.* ¶ 104.)

Defendants argue that courts in the Ninth Circuit consistently hold that "[a] valid choice-of-law provision selecting another state's law is grounds to dismiss a claim under California's UCL." (Mot. at 424, quoting *Cont'l Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059, 1070 (E.D. Cal. 2006) (other citations omitted).) In addition, defendants argue that, even if the claim is not barred by the choice-of-law provision, its allegations do not state a claim under the UCL because they fail to plead all the essential elements of any such claim. (*Id.* at 425.)

In opposition, Morgan Tire completely ignores defendants' first argument and simply asserts that it has pleaded sufficient factual allegations to make out a claim of unfair competition under California law.

The Court agrees that the parties' selection of Ohio law as their contractual choice of law requires dismissal of claim seven, brought solely under California statutory law, because the allegations in claim seven relate to the performance of the parties' contractual duties. *See Mundo Travel Corp.*, *supra*; *see also Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, 600 F. App'x 502, 506 (9th Cir. 2015) ("New Jersey law applies to this action, thus a California claim is unavailable.") (citation omitted); *Aliya Medcare Fin., LLC v. Nickell*, No. CV 14-07806, 2015 WL 4163088, at *20 (C.D. Cal. July 9, 2015) (dismissing UCL claim because, since it was

22

"related to" the underlying agreements, "the [Nevada] choice of law provision in the agreements
… controls") (citations omitted).

Defendants' motion to dismiss the seventh claim is granted.

### III. CONCLUSION

For the reasons set forth herein, the motion to dismiss (Doc. No. 56) is **granted in part
and denied in part**. The third, fourth, fifth, sixth and seventh claims for relief are dismissed.
The case will proceed with respect to the first and second claims, to the extent set forth above.


**IT IS SO ORDERED**.

Dated: September 27, 2016

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

23